Laura D. Ruccolo, Esq.
Capehart & Scatchard, PA
8000 Midlantic Drive
Suite 300 S
Mt. Laurel, NJ  08054
(856) 234-6800
Email: lruccolo@capehart.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
HONORABLE JEROME B. SIMANDLE, U.S.D.C.J.

| | | |
|---|---|---|
| JOHN J. ADAMSON, JR., | : | Civil Action |
| | : | |
| Plaintiff, | : | Docket No. 08-cv-4819(JBS) |
| | : | |
| vs. | : | **DEFENDANTS FOULKE MANAGEMENT** |
| | : | **CORP. AND TRIAD FINANCIAL** |
| FOULKE MANAGEMENT CORPORATION | : | **CORPORATION'S BRIEF IN** |
| d/b/a CHERRY HILL TRIPLEX and | : | **OPPOSITION TO PLAINTIFF'S** |
| CHERRY HILL DODGE, et al., | : | **MOTION TO DETERMINE THE** |
| | : | **ARBITRATION AGREEMENT** |
| Defendants. | : | **UNCONSCIONABLE AND TO DEEM** |
| | : | **ANSWER TO PLAINTIFF'S REQUESTS** |
| | | **FOR ADMISSIONS ADMITTED** |

RETURN DATE: July 6, 2009

1222885

## TABLE OF CONTENTS

                                                                                                                       **Page**

TABLE OF AUTHORITIES ............................................. ii

INTRODUCTION ....................................................... 1

    A.    THE AAA CONSUMER PROCEDURES, WHICH SUPPLEMENT
           AAA'S COMMERCIAL ARBITRATION RULES THAT WILL APPLY
           TO THIS MATTER AND THE COST IS NOT PROHIBITIVE ....... 4

    B.    THE COURT SHOULD NOT DEEM DEFENDANT TO HAVE
           ADMITTED TO PLAINTIFF'S REQUESTS FOR ADMISSIONS ..... 13

CONCLUSION ........................................................ 15

1222885

## TABLE OF AUTHORITIES

Page

### CASES

Alexander v. Anthony International, L.P.,
  341 F.3d 256 (3rd Cir. 2003) .................................. 13

Delta Funding Corp. v. Harris, 189 N.J. 28 (2006) ............. 12

Gay v. Credit Inform, 511 F.3d 369 (3d Cir. 2007) .............. 3

Gilmer v. Interstate/JohnsonLane Corp.,
  500 U.S. 20, 111 S. Ct. 1647, 114 L.Ed.2d 26 (1991) .......... 3

Green Tree Financial Corp.-Ala v. Randolph,
  531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) .......... 10

Johnson v. West Suburban Bank, 225 F.3d 366 (3rd Cir. 2000) .... 3

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,
  473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) .......... 3

Parilla v. IAP Worldwide Services VI, Inc.,
  368 F.3d 269 (3rd Cir. 2004) ................................ 12

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
  388 U.S., 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ......... 3

Salvadori v. Option One Mortgage Corp., 2006 U.S. Dist. Lexis
  79656 (D.N.J. October 17, 2006) ............................. 12

Spinetti v. Service Corp., 324 F.3d 212 (3rd Cir. 2003) ....... 12

### RULES

Fed. R. Civ. P. 10(c) .......................................... 1

1222885

## INTRODUCTION

Defendants Foulke Management Corp and Triad Financial Corp. (collectively "Defendants") file this Brief in opposition to Plaintiff's Motion to Determine the Arbitration Agreement Unconscionable and to Deem the Answers to Plaintiff's Requests for Admissions as Admitted.[1]

As an initial matter it is noted and acknowledged that Plaintiff is deaf. However, while the Defendants have sympathy for the Plaintiff's condition, they are not the cause of it, nor does Plaintiff allege that to be the case. It is respectfully submitted that Plaintiff's deafness, which he relies heavily upon and repeatedly references throughout his brief and certification, is not a material fact to be considered by the Court in determining whether arbitration would be "prohibitively expensive". Rather, Plaintiff appears to be attempting to use this fact to garner the Court's sympathy in ruling his way. For example, Mr. Adamson asserts in his certification that "no able-bodied person" would have to "lay bear his/her financial life" in the manner in which Plaintiff has done in this motion. That simply is not true. Anyone who chooses to challenge an arbitration agreement to which he or she agreed to based on

---

[1] Defendants incorporate by reference pursuant to Fed. R. Civ. P. 10(c), all pleadings, certifications, exhibits and brief s submitted in support of Defendants motion to enforce the arbitration agreement.

1

1222885

financial reasons would be required to do the same regardless of whether or not the individual was deaf.

Congress, in its ultimate wisdom, did not provide that a deaf person should not be compelled to arbitrate his claims in either the passing of the Federal Arbitration Act or the Americans With Disability Act. Similarly, New Jersey's legislators did not make any such exceptions for deaf individuals regarding arbitration in enacting the New Jersey Law Against Discrimination. Nor, is there any case law concerning the enforcement of arbitration agreements that provides such an exception for deafness from enforcement. The truth, plain and simple, is that there is no law that holds that Mr. Adamson's condition has any bearing on the issue at hand.

There is on the other hand a strong public policy favoring enforcement of arbitration agreements such as the one at issue here. The Federal Courts have long recognized the strong presumption in favor of enforcing arbitration agreement like the one signed by Plaintiff in this case, even in cases involving protected classes.

> Soler's concern for statutorily protected classes provides no reason to color the lens through which the arbitration clause is read. By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for

2

1222885

> review of the courtroom for the simplicity, informality, and expedition of arbitration. We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. See, Wilko v. Swan, supra. Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Nothing, in the meantime, prevents a party from excluding statutory claims from the scope of an agreement to arbitrate.

See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S., 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Plaintiff cannot overcome the strong presumption favoring arbitration.

> "Throughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."

Johnson v. West Suburban Bank, 225 F.3d 366, 371 (3rd Cir. 2000), quoting Gilmer v. Interstate/JohnsonLane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L.Ed.2d 26 (1991); Gay v. Credit Inform, 511 F.3d 369, 378-79, 387 (3d Cir. 2007).

Plaintiff's arguments in support of his motion are heavy on exaggeration and light on substance and the law. In fact Plaintiff's brief ignores the controlling Third Circuit cases on

this issue and instead relies on a District Court case out of Pennsylvania decided almost ten years ago and before the controlling Third Circuit opinions. As set forth below, under the law in the Third Circuit the Court should find that arbitration is not "prohibitively expensive" and enforce the arbitration agreement.

> A. **THE AAA CONSUMER PROCEDURES, WHICH SUPPLEMENT AAA'S COMMERCIAL ARBITRATION RULES THAT WILL APPLY TO THIS MATTER AND THE COST IS NOT PROHIBITIVE.**

The American Arbitration Association has instituted under the Commercial Arbitration Rules "Supplementary Procedures for Consumer-Related Disputes" that apply to all consumer related arbitration claims. This was done in order to make the costs of arbitration more reasonable for consumers. The American Arbitration Association ("AAA") web-site makes this very clear. Specifically, AAA states to the public the following:

> Every year, billions of business transactions occur with consumers. Inevitably, some disputes will arise. Using its Consumer Due Process Protocol, the AAA offers administration services for disputes where there is a disagreement between individual consumers and businesses. The AAA applies the Supplementary Procedures for Consumer-Related Disputes - **a supplement to the Commercial Arbitration Rules** and Mediation Procedures that includes a glossary of ADR terms -- when arbitration clauses exist in agreements between individual consumers and business where the business has a standardized, systematic application of arbitration clauses with

4

> customers and where the terms and conditions of the purchase of standardized consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal household use. (Emphasis added.)

Attached as Exhibit "A" to the certification of Laura D. Ruccolo, Esquire is a copy of AAA statement regarding the application of Consumer Procedures). Thus, the application of the Consumer Procedures under AAA Commercial Arbitration Rules is consistent with AAA procedures under its Commercial Arbitration Rules and is not inconsistent with the language in the arbitration agreement that applies the "Commercial Arbitration Rules".

The application of the Consumer Procedures is further evidenced by the Commercial Arbitration Rules Administrative fee section, which is attached to Mr. Jacko's Certification as Exhibit D and here as Exhibit "C" to the certification of Laura D. Ruccolo. Specifically, that sections states as follows:

> In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the Supplementary Procedures for Consumer-Related[2] disputes when filing a consumer-related claims

---

[2] The Procedures are called "supplementary" because they supplement the Commercial Arbitration Rules.

5

1222885

The AAA recites again when the Supplementary Procedures for Consumer-Related Disputes will apply. (See also, Consumer Arbitration Task Force - Searle Civil Justice Institute, Consumer Arbitration Before the American Arbitration Association Preliminary Report attached as Exhibit "D" to Certification of Laura D. Ruccolo, Esquire.)

In addition, the consumer can seek a deferral or waiver of the administrative fees on a showing of financial hardship and request an arbitrator willing to serve pro-bono.[3]

The Defendant's arbitration agreement at issue here is a standardized agreement used by the Defendant in a systematic way. (See Certification of Bill Kopp). The American Arbitration Association has reviewed the Defendant's arbitration agreement and has applied the Supplementary Procedures for Consumer Related Disputes ("Consumer Rules") of the Commercial Arbitration Rules every time a consumer has sought to arbitrate a claim. (See Certification of Laura D. Ruccolo, Esquire Exhibit "E"). There have been no claims presented to AAA under the arbitration agreement at issue that have not been handled under the AAA Commercial Arbitration Rules Supplementary Procedures for Consumer Related Disputes. (See Certification of Laura D.

---

[3] American Arbitration Association, Administrative Fee Waivers and Pro Bono Arbitrators ("Pro Bono Service by Arbitrators"), available at www.adr.org/si.asp?id=22040 ("A number of arbitrators on the AAA panel have volunteered to serve pro bono for one hearing day on cases where an individual might otherwise be financially unable to pursue his or her rights in the arbitral forum.")

6

1222885

Ruccolo, Esquire). In addition, in all cases brought by a consumer under the arbitration agreement at issue, the AAA has always applied Consumer Rules Fee Schedule, which is a supplement to the Commercial Arbitration Rules. (See Certification of Laura D. Ruccolo, Esquire Exhibits "B", "C" and Exhibit "E".) The fees that a consumer is responsible to pay is limited to $125.00 when the claim is less than $10,000.00 and $375.00 when the claim is greater than $10,000.00 but less than $75,000.00 (See Certification of Laura D. Ruccolo, Esquire Exhibit "B" and Exhibit "D").

Here, the Plaintiff would be required to pay only $125.00 in arbitration fees. However, Defendant has agreed to pay all of Plaintiff's arbitration costs, including the cost of sign language interpreter. (See Certification of Bill Kopp). The Plaintiff only pleads minimal actual damages in his complaint related to his attempted purchase of a vehicle. In paragraph 49 of the complaint, Plaintiff claims to have paid $104.00 for tires on the vehicle which he attempted to purchase. Then, in paragraph 67 of the Plaintiff's Complaint, he alleges that he paid $284.83 for document and motor vehicle fees that was not returned. Thus, the actual damages alleged by Plaintiff on the attempted purchase of the vehicle that was not consummated are less than $500.00. The AAA fee schedule notes that the fee are "based on <u>actual damages</u>, and not on any additional damages,

7

1222885

such as attorney's fees or punitive damages." (See Exhibit "B", page 6, attached to the Certification of Laura D. Ruccolo.)

Plaintiff's calculations of its cost is inflated and unsubstantiated. Without support, the Court can not accept as true Plaintiff's unsubstantiated and speculative costs. The Plaintiff's calculations of the cost of arbitration is based on a faulty assumption that the Plaintiff's case is valued at $2,000,000.00 to $5,000,000.00. There is nothing in the Complaint that would justify an award of damages in that amount. Moreover, Plaintiff's counsel provides no guidance or explanation as to how an actual damage award of $2,000,000.00 to $5,000,000.00 could ever be arrived at.

Further, Plaintiff's calculations of expected costs assume that he would be required to pay for a hearing room. That is just a wrong assumption. Typically AAA arbitrations are conducted in lawyers' conference rooms and are held in the one of the party's office conference rooms. This arbitration could take place in Defendant's counsel's conference room at no charge to the Plaintiff. Therefore, it is unlikely that Plaintiff would incur any cost for a hearing room.

Moreover, Plaintiff unreasonably assumes that a hearing would take 73 hours. Typically, a case such as this would take less than 8 hours.(See Certification of Laura D. Ruccolo,

8

1222885

Esquire).[4] Moreover, Mr. Jacko's calculation of arbitrator's fees in paragraph 13(g) of his certification ignores the AAA's instruction on following, under the Commercial Arbitration Rules, the Consumer Fee Schedule. (See Exhibit D to Jacko's certification.) Also, Mr. Jacko's calculation is based on assumed fees over 3 days, which is three (3) times more than the arbitration is likely to take. In addition, Mr. Jacko's calculation regarding a sign language interpreter assumes the need for two (2) interpreters, without explanation, or a six (6) day arbitration. In addition, Mr. Jacko used $73.00 as the hourly rate of a sign language interpreter. However, a sign language interpreter can be found at a much lower rate of around $51.00 an hour. (See certification of Laura D. Ruccolo, Esq. Exhibit "H") Clearly, Mr. Jacko in his certification has gone out of his way to speculate excessive, unrealistic and unsubstantiated costs. So that, for example, the sign language interpreter, which charge Defendant has agreed to pay, would be approximately $500.00 (8 hours at assuming Mr. Jacko's rate of $73.00/hour) not $3500.00 as Plaintiff asserts.

---

[4] Plaintiff's assumption that the presence of a sign language interpreter will slow the proceedings is wrong. A sign language interpreter differs from a spoken language interpreter, for example like a Spanish interpreter, where the parties stop speaking so that the Spanish language interpreter can interpret. Rather, sign language interpretation does not involve any stops in the proceedings. This was evidenced at the motion to enforce the arbitration agreement, where the court permitted the Plaintiff to be present with a sign language interpreter. There was no stopping or pausing of the proceedings or waiting for the sign language interpreter to interpret.

9

The Supreme Court places the burden on the Plaintiff to come forward to demonstrate that the arbitration would be prohibitively expensive by showing a "likelihood of incurring such costs", not shear speculation of costs. Green Tree Financial Corp.-Ala v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373(2000). The Plaintiff's unfounded assertions of costs, which are based on an amount of damages are not supported by his complaint or even explained, assume a lengthy arbitration, without support and which ignore the application of the AAA Commercial Arbitration Rules, Supplementary Consumer-Related Procedures, which are part of AAA's Commercial Arbitration Rules are not sufficient to meet that burden. Id. at Footnote 6.[5]

Moreover, Plaintiff's conclusory certification, which does not provide any bills or bank statements in support of the claims, is also not acceptable proof. See Blair v. Scott Specialty Gases, 283 F.3d 595 (3rd Cir. 2002). Even more troubling is that subpoenaed records do not substantiate the sworn testimony of the Plaintiff. The Third Circuit requires this Court to take a critical look at the Plaintiff's claims regarding the cost and ability to pay. In Blair, supra, the

---

[5] Mr. Jacko has attached a number of hearsay articles to his certification and apparently is relying on same as support for Plaintiff's motion. The Court should not accept or rely on these articles. The Third Circuit has noted that an article citing average fees for arbitrators is insufficient proof of likely costs. Blair v. Scott Specialty Gases, 283 F.3d 595, 607 (3rd Cir. 2002).

10

1222885

Third Circuit noted that a conclusory affidavit setting forth a statement that monthly bills exceed income without copies of bills or banks statements is not sufficient. Here, Plaintiff does just that; he has attached no copies of bank statements or bills to support these figures to his certification. Moreover the Third Circuit noted that the Court should also review the assets of the Plaintiff. Id. at 608. Here, Plaintiff's affidavit is silent concerning his assets. He asserts that he owns a home with his wife, and then asserts that he takes responsibility for paying the full mortgage amount, without ever stating the value of the home, his equity therein or identifying if his wife brings in any income to contribute to the family bills. Given the Mr. Adamson receives Social Security Disability of $1300.00 a month and his wife is also deaf, it is reasonable for the Court to assume that the wife has income of $1300.00 which should go to the joint bills paying for the couple's joint assets. Moreover, even with the inflated and unsubstantiated bills and lack of information on the value of the Plaintiff's assets, the Plaintiff's monthly bills do not exceed his monthly income as was the case in Blair.

Also disturbing is that Plaintiff has produced income tax returns that are inconsistent with sworn statement that he is married with four (4) dependent children. In the years 2006, 2007 and 2008, he filed tax returns as a single individual with

11

1222885

no dependents (Attached as Exhibit "F" to Certification of Laura D. Ruccolo).

Even if the Court finds that Plaintiff will be required to pay arbitration fees that make arbitration "prohibitively expensive", such a finding does not preclude an Order compelling arbitration. The Courts have held that a provision that is found to be unconscionable can be severed and the remaining portions of the arbitration agreement enforced. The Third Circuit in Spinetti v. Service Corp., 324 F.3d 212 (3rd Cir. 2003) held that provisions requiring the employee to pay one half the arbitration costs was unconscionable given Spinetti's financial circumstances. The Court severed the unconscionable provisions and nevertheless enforced the arbitration agreement ordering the defendant employer to pay the arbitration costs.[6] Here, the Defendant would agree with such a result, as Defendant has agreed to pay all costs of the arbitration, including the cost of the sign language interpreter.

---

[6] Plaintiff argues other portions of the arbitration agreement are unconscionable, including the "Starting Arbitration" section. While the provision is not unconscionable and Plaintiff cites to no law that would provide a finding of unconscionability. Moreover, even if the provision is found to be unconscionable, then severability is the appropriate remedy, not unenforcement of the arbitration agreement. See, Spinetti, supra,; Parilla v. IAP Worldwide Services VI, Inc., 368 F.3d 269 (3rd Cir. 2004); Delta Funding Corp. v. Harris, 189 N.J. 28 (2006). It should be noted that Judge Bumb has enforced a provision similar to the one Plaintiff complains about in Salvadori v. Option One Mortgage Corp., 2006 U.S. Dist. Lexis 79656 (D.N.J. October 17, 2006), and even awarded the Defendant business attorney's fees.

1222885

The Third Circuit has also stated that the Defendant should be given the opportunity to offer to pay all of the arbitrator's fees. Blair, 283 F.3d at 610. See also, Alexander v. Anthony International, L.P., 341 F.3d 256, 268 (3rd Cir. 2003) (reiterating that the Defendant should be afforded the opportunity to pay all of the arbitrator's fees.). Here, Defendant is not only agreeing to pay all of the arbitrator's fees, but also all other necessary costs, including the cost of a sign language interpreter. Given the strong presumption in favor of arbitration, and the Defendant's agreement to assume the costs of the arbitration, the Court can not find that arbitration would be prohibitively expensive for the Plaintiff, because Plaintiff would incur no costs. Accordingly, the Court should dismiss the complaint and compel arbitration under the arbitration agreement with the Defendant bearing the cost of the arbitration.

**B.   THE COURT SHOULD NOT DEEM DEFENDANT TO HAVE ADMITTED TO PLAINTIFF'S REQUESTS FOR ADMISSIONS.**

Plaintiff improperly moves to have the Court deem the Defendant to have admitted Plaintiff's request for admissions, all of which have been properly denied. Plaintiff incredibly argues that this Court should deem the requests for admissions admitted because they are the "law of the case". First, none of the Plaintiff's requests for admissions have anything to do with

13

1222885

the law. What rules AAA will apply to arbitration is not a question of law, but one of fact. Clearly, the "law of the case" doctrine argued by Plaintiff has no application to requests for admissions of fact.[7]

Moreover, Defendants' responses to requests for admissions are not inconsistent with the Court's ruling. The Court noted in its opinion that the Arbitration Agreement applied the Commercial Rules, and noted that it saw no basis in the text of the agreement that the Consumer Rules would apply. The Court did not have the benefit of a full understanding that the AAA's Consumer Rules are in fact part of and supplement to AAA's Commercial Rules, as is explained on AAA website and herein along with the exhibits to the Certification of Laura D. Ruccolo and Exhibit D of Mr. Jacko's certification. Clearly, the Court in issuing its opinion agreed that the record was not sufficiently developed on the issue of costs of arbitration and provided the parties the opportunity to do so. Given that the Consumer Rules are part of the Commercial Arbitration Rules, the Defendants' responses are accurate and consistent with the language in the agreement. There is no basis upon which the Court should deem any of the Defendants' responses to the

---

[7] Moreover, if Plaintiff truly believed that the Court ruled on the matters in the requests for admissions and it was the law of the case, then why seek Defendants' admission of same and now ask the Court to Order that Defendants have admitted same?

14

1222885

requests for admissions as having been admitted. Consequently, Plaintiff's motion should be denied.

### CONCLUSION

The Arbitration Agreement is not unconscionable. The Defendant is willing to pay the arbitration costs, including the cost of a sign language interpreter and, as a result, pursuant to the law in the Third Circuit, this Court must enforce the arbitration agreement. In addition, there is no basis for the Court to deem Defendant to have admitted to Plaintiff's requests for admissions. Consequently, Plaintiff's motion to determine the arbitration agreement unconscionable and to deem answers to Plaintiff's request for admissions admitted should be denied.

Moreover, the Court should take further efforts to investigate why the subpoenaed records and tax returns are inconsistent with Mr. Adamson's sworn statement.

                              CAPEHART & SCATCHARD, P.A.
                              Counsel for Defendants, Foulke
                              Management Corporation
                              and Triad Financial Corporation

DATED:   6/22/09                s/ Laura D. Ruccolo
                                     LAURA D. RUCCOLO

1222885